**UNITED STATES of America, Appellee,**

v.

**Henry Lee CARTER, also known as Henry Lo Carter, also known as Prince Carter, Appellant.**

No. 96–1329.

United States Court of Appeals, Eighth Circuit.

Submitted July 23, 1996.

Decided Aug. 13, 1996.

Earl P. Gray, Lisa D. Lodin, St. Paul, MN, for appellant.

Richard Newberry, Minneapolis, MN, for appellee.

Before FAGG, BOWMAN, and HANSEN, Circuit Judges.

PER CURIAM.

Henry Lee Carter appeals the 210–month sentence imposed by the district court [1] after he pleaded guilty to possessing cocaine base (crack) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We affirm.

At sentencing, Carter, an African–American, objected to his offense-level calculation, which was derived from the penalty scheme set forth in 21 U.S.C. § 841(b)(1), providing the same penalties for given amounts of crack and 100 times greater amounts of powder cocaine ("the 100–to–1 ratio"). Carter's objection was premised on Congress's rejection of a proposed amendment to the Sentencing Guidelines—Amendment 5—which would have eliminated the 100–to–1 ratio and equalized the penalties for crack and powder cocaine. Carter argued the 100–to–1 ratio had a disproportionate adverse effect on African–Americans, Congress's rejection of Amendment 5 evidenced a discriminatory purpose on Congress's part in maintaining the penalty scheme, and thus, continued application of the penalty scheme violated his Fifth Amendment equal protection and due process rights. Carter also sought a downward departure under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, because the Sentencing Commission had concluded the 100–to–1 ratio was not justified. The district court overruled Carter's objection and denied his downward-departure request, and he appeals.

We review de novo Carter's equal protection challenge. *See United States v. McMurray*, 34 F.3d 1405, 1413 (8th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1164, 130 L.Ed.2d 1119 (1995). A statute not involving a suspect class or a fundamental right enjoys a strong presumption of validity, and will survive an equal protection chal-

1. The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

lenge if it is rationally related to a legitimate governmental purpose. *Independent Charities of Am., Inc. v. State of Minn.*, 82 F.3d 791, 797 (8th Cir.1996); *United States v. House*, 939 F.2d 659, 664 (8th Cir.1991). When a race-neutral statute is challenged on the ground that it has a disproportionate adverse effect upon racial minorities, we must determine if the adverse effect "reflects invidious [race]-based discrimination." *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). As applied here then, the disproportionate adverse effect occasioned by section 841(b)(1) on African–Americans violates the Constitution's guarantee of equal protection only if the impact can be traced to a discriminatory purpose on Congress's part in rejecting Amendment 5. *See id.* at 272, 99 S.Ct. at 2292. While impact and inevitability or foreseeability of the consequences of rejecting Amendment 5 are not irrelevant to the issue of discriminatory intent, discriminatory purpose requires a finding that Congress reaffirmed section 841(b)(1) "at least in part 'because of,' not merely 'in spite of,' " its adverse effect on African–Americans. *See id.* at 274, 279, 99 S.Ct. at 2293, 2296; *accord United States v. Clary*, 34 F.3d 709, 712 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1126 (1995).

■ In its report to Congress on the differing penalties for crack and powder cocaine, the Sentencing Commission expressed concern, among other things, about the effect the 100–to–1 ratio had on African–Americans. U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy*, xi–xii (Feb.1995). Although unanimous in its belief that the 100–to–1 ratio was inappropriate, the Sentencing Commission split four-to-three as to the appropriate ratio, the majority concluding the base sentence for crack and powder cocaine should be the same, i.e., a one-to-one ratio, and the minority declining to endorse such a ratio; one of the dissenters suggested a five-to-one ratio might be appropriate. Absent congressional action, Amendment 5 would have become law on November 1, 1995. *See* 28 U.S.C. § 994(p). Prior to that, however, the President signed a bill passed by Congress which disapproved Amendment 5. Fed-

eral Sentencing Guidelines, Amendment, Disapproval, Pub.L. No. 104–38, 109 Stat. 334 (1995). In connection with that legislation, Congress directed the Sentencing Commission to submit recommendations regarding changes to the statutes and Sentencing Guidelines governing cocaine-related offenses. The recommendations, Congress said, must reflect, inter alia, that sentences for trafficking in a given quantity of crack should generally exceed the sentence for trafficking in a like amount of powder cocaine, and must propose revision of the current ratio "in a manner consistent with the ratios set for other drugs." *Id.*, 109 Stat. 334–35.

We conclude Carter has not shown that Congress rejected amendment 5 or that the President approved the bill because they wanted to impose a disproportionate adverse effect on African–Americans. *See McCleskey v. Kemp*, 481 U.S. 279, 298–99, 107 S.Ct. 1756, 1770–71, 95 L.Ed.2d 262 (1987); *Feeney*, 442 U.S. at 279, 99 S.Ct. at 2296. Looking, as we must, to other sources of circumstantial and direct evidence of intent, such as the historical background of Congress's decision, the specific sequence of events preceding the decision, departures from the normal procedural sequence, substantive departures, and legislative or administrative history, we conclude that none of these sources provides sufficient evidence that Congress acted with a discriminatory purpose in rejecting Amendment 5. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266–68, 97 S.Ct. 555, 563–65, 50 L.Ed.2d 450 (1977). Of particular significance, we note that we have previously determined that Congress did not act with a discriminatory purpose in enacting section 841(b)(1), and that legitimate reasons existed for Congress's initial adoption of the statute. *See, e.g., Clary*, 34 F.3d at 713–14; *United States v. Johnson*, 28 F.3d 1487, 1493–94 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 768, 130 L.Ed.2d 664, —— U.S. ——, 115 S.Ct. 1263, 131 L.Ed.2d 142 (1995); *United States v. Buckner*, 894 F.2d 975, 978–80 (8th Cir.1990) (involving substantive due process challenge to § 841(b)(1)). The fact that Congress has seldom, if ever, rejected a

proposed amendment before rejecting Amendment 5 does not mean that Congress departed from the normal procedural sequence utilized in amending the Guidelines. *See* 28 U.S.C. § 994(p) (specifically permitting Congress to disapprove proposed amendment).

We conclude that Carter has failed to sustain his burden of negating every conceivable basis of support for Congress's statutory rejection of Amendment 5. *See Independent Charities,* 82 F.3d at 797 (discussing burden). We further conclude that Congress's rejection of Amendment 5 and its direction that the Commission continue studying the problem were rationally related to a legitimate government purpose, namely, determining a more appropriate punishment for crack offenses than the existing ratio or the ratio proposed by the Commission majority. *Cf. United States v. Jackson,* 84 F.3d 1154, 1161 (9th Cir.1996) (concluding that neither Commission's report, nor Congress's rejection of Amendment 5, affects precedential value of court's ruling that Congress had rational basis for 100–to–1 ratio, and that Congress's enactment of ratio was rational notwithstanding that it differs from Commission's current recommendation).

■ Finally, we conclude Carter's downward-departure argument is foreclosed by *United States v. Lewis,* 90 F.3d 302, 304–06 (8th Cir.1996).

Accordingly, the judgment of the district court is affirmed.