**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Errol Eugene WASHINGTON,**
**Defendant–Appellant.**

No. 96–5196.

United States Court of Appeals,
Sixth Circuit.

Argued March 12, 1997.

Decided Oct. 8, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 4, 1997.*

---

* Judge Jones would grant rehearing for the reasons stated in his dissent.

Lawrence W. Moon, Jr., Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Nashville, TN, for Plaintiff–Appellee.

Patrick T. McNally (argued and briefed), Hollins, Wagster & Yarbrough, Nashville, TN, for Defendant–Appellant.

Errol Eugene Washington, Manchester, KY, pro se.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which SILER, J., joined. JONES, J. (pp. 518–19), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

Since their inception in 1987, the United States Sentencing Guidelines ("Sentencing Guidelines") have engendered controversy. A major source of tension has been the 100:1 quantity ratio of powder cocaine to crack cocaine ("100:1 ratio"). The 100:1 ratio treats an individual who traffics in a given quantity of crack cocaine the same as one who traffics in 100 times as much powder cocaine. The United States Sentencing Commission ("Sentencing Commission") and Congress have engaged in an ongoing dialogue regarding the propriety of the 100:1 ratio. In light of this dialogue, defendant Errol Eugene Washington, a convicted crack cocaine dealer, challenges the 100:1 ratio on various constitutional grounds. In this case, we hold that the Sentencing Commission's continuing discussion with Congress does not

alter prior Sixth Circuit precedent. Following that precedent, we again uphold the 100:1 ratio and **AFFIRM** Washington's conviction and sentence against all presented challenges.

## I.

On August 20, 1993, Michael Pardue was arrested by the Austin Peay University Police in Clarksville, Tennessee for possession of crack cocaine. The Clarksville Police Department granted him immunity in exchange for Pardue's assistance in apprehending defendant Washington, Pardue's alleged supplier of narcotics. Pardue disclosed his criminal history with Washington to the authorities, including multiple purchases of crack cocaine from the defendant. According to Pardue, those transactions occurred in various cities, including Atlanta, Chattanooga, and Clarksville. The sales were always directly negotiated by Washington, although sometimes Pardue consummated the deal by purchasing the crack cocaine from co-defendant Sylvia Smith.

The Clarksville Police monitored Pardue's subsequent communication with Washington. On August 28, 1993, in the parking lot of a Clarksville hotel under surveillance by the Clarksville Police Department, Pardue approached Washington's vehicle and purchased approximately 650 grams of crack cocaine from the defendant. Clarksville Police pursued Washington following the sale, but he momentarily evaded them. Soon thereafter, he was apprehended outside a nearby hotel room registered to Smith. A subsequent search of the rented automobile driven by Washington revealed the money Pardue used in the purchase, as well as a

fully-loaded, semi-automatic pistol in the automobile console.

A federal grand jury indicted Washington and Smith for conspiracy to distribute crack cocaine and possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), respectively. Washington was also indicted for using or carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Following a trial by jury, Washington was convicted on all counts.[1]

## II.

On appeal, Washington raises five issues, which we address in the order presented at trial. First, Washington claims his Sixth Amendment guarantee of jury unanimity was abridged by the duplicitous nature of Count II of the indictment. Second, he challenges the sufficiency of the evidence supporting his firearm conviction. Third, he asserts that the trial judge erred in enhancing his sentence for playing a leadership role in the drug transactions. Fourth, Washington challenges the Sentencing Guidelines' treatment of crack cocaine violations as unconstitutional. Finally, he contends that the trial judge erred in not issuing a downward departure at sentencing.

## A.

Washington first asserts that Count II of the indictment was duplicitous, creating jury confusion resulting in inconsistent verdicts in violation of Washington's Sixth Amendment guarantee to jury unanimity.[2] We review the district court's decision not to dismiss Count II of the indictment for abuse of dis-

---

1. Smith was also convicted on the conspiracy count. She was acquitted of possession with intent to distribute crack cocaine and, instead, convicted of the lesser included offense of simple possession of crack cocaine. Her conviction was affirmed in an unpublished opinion of this Court. *United States v. Smith*, No. 95–6099, 1996 WL 254653 (6th Cir.1996) (per curiam).

2. Count II of the indictment charged Washington with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). It read:

In or about August, 1993, ... WASHINGTON and ... SMITH knowingly and intentionally did unlawfully distribute, and possess with intent to distribute ... a quantity of crack cocaine.

We note that Washington makes this same duplicity challenge to Count I of the indictment, which charged Washington with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. That challenge, first raised in defendant's reply brief, is not properly before this Court and we decline to address it. *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir.1993).

cretion. *United States v. Overmyer,* 899 F.2d 457, 465 (6th Cir.1990).

A duplicitous indictment charges separate offenses within a single count. *United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *Id.* Furthermore, the jury cannot convict on one offense and acquit on another offense charged in the same count. 1 Charles Alan Wright, *Federal Practice and Procedure,* § 142 (1982). Duplicity can potentially prejudice the defendant in sentencing, obtaining appellate review, and protecting himself against double jeopardy. *Id.*

Washington's duplicity argument is based upon the government's presentation of multiple factual scenarios to prove Count II of the indictment.[3] The mere existence, however, of multiple theories of liability or multiple factual predicates for violation of a statute does not render the indictment duplicitous. *See United States v. Hixon,* 987 F.2d 1261, 1265 (6th Cir.1993) (an indictment under statute which subjects several alternative acts to the same punishment may charge any or all acts conjunctively without duplicity, and government need only prove violation of one of the alleged acts to prove violation of the statute); *United States v. Dean,* 969 F.2d 187, 195 (6th Cir.1992) (principal liability and liability for aiding and abetting charged in same count does not render count duplicitous; acts proscribed by statute, stated in disjunctive, may be charged in the conjunctive in the indictment). Count II of the indictment charged only one offense, possession with intent to distribute cocaine in violation of 18 U.S.C.

§ 841(a)(1). The government's presentation of multiple factual scenarios to prove that offense does not render the count duplicitous, and the district court did not abuse its discretion in refusing to dismiss the indictment on that ground.

Washington nevertheless argues that the government's introduction of multiple factual scenarios to prove Count II of the indictment required the trial court to specifically instruct the jury on the requirement of unanimity with respect to Count II. The trial court instead gave only a general instruction on unanimity. Because Washington did not object to the general unanimity instruction at trial, our review of the district court's decision not to give a specific unanimity instruction is limited to plain error. *United States v. Sanderson,* 966 F.2d 184, 187 (6th Cir. 1992).

A specific unanimity instruction is required only when one of three situations exists: 1) the nature of the evidence is exceptionally complex; 2) there is a variance between indictment and proof at trial; or 3) there is a tangible indication of jury confusion, as when the jury has asked questions of the court. *Duncan,* 850 F.2d at 1114. Ignoring the first two scenarios, Washington seizes upon the jury's conviction of both Smith and himself on the conspiracy count, combined with his conviction for the substantive offense of possession with intent to distribute and Smith's conviction for simple possession, to assert that the jury's verdict is "inconsistent and cannot be explained other than by a determination that the jury applied the incorrect legal standard." According to Washington, this allegedly inconsistent verdict indicates a tangible level of jury confusion requiring a specific unanimity instruction.[4]

---

3. At trial, the government offered proof of two separate drug transactions involving each defendant in August, 1993. Either transaction could have provided the predicate for a conviction under Count II. The government then presented alternative theories as to each defendant's involvement in each transaction; either distributor, possessor with intent to distribute, or simple possessor, as well as aider and abettor for each of the above theories. Combining the two separate transactions, the two defendants, and the six theories of involvement for each, defendant ar-

gues that 72 different possible factual scenarios were charged under Count II.

4. Washington does not argue for reversal based solely upon the allegedly inconsistent verdict, perhaps recognizing that a logically inconsistent verdict, by itself, does not warrant reversal. *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932). Rather, Washington argues only that the allegedly inconsistent verdict indicates a level of jury confusion requiring a specific unanimity instruction.

We do not agree that the jury's verdict in this case was logically inconsistent. The jury could have found that Smith conspired with the defendant to distribute crack cocaine, but did not herself possess with intent to distribute crack cocaine in August, 1993, as Count II charged. Such reasoning would not be logically inconsistent. Because the verdict is not logically inconsistent, the level of jury confusion necessary for a specific unanimity instruction is not present. Accordingly, the district court did not commit plain error in charging the jury with only the general unanimity instruction. *Duncan,* 850 F.2d at 1113–14 (only general instruction required when two or more factual bases for conviction are contained within a specific count of indictment).

### B.

 Washington's next claim is that the evidence adduced at trial was insufficient to support his conviction for using or carrying a firearm in furtherance of a drug-trafficking offense under 18 U.S.C. § 924(c)(1). We review Washington's challenge to the sufficiency of the evidence in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We must affirm if "any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.*

Section 924(c)(1) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to imprisonment for five years. . . ." 18 U.S.C. § 924(c)(1). Because the statute is written in the disjunctive, a defendant can be convicted under § 924(c)(1) if he either uses *or* carries a firearm in relation to a drug-trafficking offense. *Bailey v. United States,* — U.S. —, —, 116 S.Ct. 501, 507, 133 L.Ed.2d 472 (1995) (firearm can be used without being carried and vice versa). Prior to *Bailey,* however, this Court had essentially collapsed this distinction, adopting a broad interpretation of the language "uses or carries" requiring the government to prove only that the weapon was

readily available for use or that it emboldened the defendant during commission of the underlying offense. *United States v. Christian,* 942 F.2d 363, 368 (6th Cir.1991). In *Bailey,* the Supreme Court narrowed application of the "use" prong for conviction under § 924(c)(1). *Id.* at —, 116 S.Ct. at 506. The Court rejected the broad "proximity and accessibility standard" adopted by many federal circuits and instead required the government to prove the defendant "actively employed" the firearm in relation to the underlying substantive offense in order to be convicted under the use prong of the statute. *Id.* In light of *Bailey,* the government concedes that Washington's conviction cannot be sustained under the "use" prong of § 924(c)(1). The government contends, however, that the evidence presented at trial supports Washington's conviction under the "carry" prong of the statute.

 Since *Bailey,* this Court has had numerous occasions to address the applicability of the carry prong of § 924(c)(1). *United States v. Allen,* 106 F.3d 695 (6th Cir.1997); *United States v. Taylor,* 102 F.3d 767 (6th Cir.1996); *United States v. Moore,* 76 F.3d 111 (6th Cir.1996); *United States v. Riascos–Suarez,* 73 F.3d 616 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). Under these cases, the government must prove more than mere transportation of the firearm in relation to the underlying offense to support a conviction under the "carry" prong of § 924(c). The government must show: (1) "immediate availability and physical transportation" of the firearm by the defendant (2) in relation to a drug trafficking offense. *Moore,* 76 F.3d at 113 (clarifying holding in *Riascos–Suarez*). *See also Taylor,* 102 F.3d at 769 (same). Both requirements must be proven in order to sustain a conviction under the carry prong of the statute. *Taylor,* 102 F.3d 767, 769 (firearm must be "immediately accessible" to defendant *and* defendant must be in process of transporting firearm "in relation to a drug trafficking crime") (citing *Moore,* 76 F.3d at 113) (emphasis added).

Relying upon these recent Sixth Circuit cases, Washington contends that the jury "could [not] conclude that the handgun was

available for immediate use" when the drug sale took place. We disagree. The firearm was discovered in the automobile console of Washington's rented vehicle. This easily accessible location placed the weapon within reach and immediately available for Washington's use, thus satisfying the immediate availability and physical transportation element for conviction under the carry prong of § 924(c)(1). *Riascos–Suarez*, 73 F.3d at 623. Regarding the second element, "in relation to" a drug trafficking offense, the government introduced testimony that Pardue approached Washington's vehicle with marked money and then returned with the crack cocaine absent the money. We find that because the firearm was located in the automobile console during this transaction, "a reasonable juror ... could only conclude ... that the gun was being transported during and in relation to th[e sale of narcotics]." *Taylor*, 102 F.3d at 771. No reasonable doubt exists that Washington carried the firearm during and in relation to a drug trafficking offense. Accordingly, we decline to vacate Washington's § 924(c)(1) conviction.[5]

### C.

■ Washington also objects to the district court's determination that he exercised a leadership role in the drug transactions. That determination resulted in an enhancement of Washington's sentence under U.S.S.G. § 3B1.1.[6]

■ "A district court's determination regarding a defendant's role in the offense is reversible only if clearly erroneous." *United*

---

5. We further note that Washington's conviction for conspiracy to distribute cocaine under 21 U.S.C. § 846 could also provide the predicate substantive offense for his conviction under § 924(c)(1). *Riascos–Suarez*, 73 F.3d at 624 (affirming defendant's Alford plea to a count of violating § 924(c)(1) for carrying a firearm "in relation to the drug trafficking crime of conspiracy to possess with intent to distribute cocaine"). Given Washington's sale of drugs to Pardue in the parking lot, the presence of the cash ·in his rented automobile, and the hotel room located nearby, no reasonable doubt remains that Washington also carried the gun in relation to his criminal conspiracy to distribute crack cocaine. *Id.*

*States v. Alexander*, 59 F.3d 36, 38 (6th Cir.1995) (quotations and citations omitted). In reviewing this determination, we give due deference to the district court's application of the facts to the Sentencing Guidelines. *Id.*

After reviewing the trial transcript, we hold that the district court did not err in concluding that Washington played a leadership role in the distribution of narcotics. Testimony indicated that Washington always negotiated the drug sales, and that he often used codefendant Smith as his courier, referring to Smith as "his girl" when informing Pardue that she would deliver the drugs to him. In light of this testimony, the district court did not commit clear error in enhancing Washington's sentence under § 3B1.1 for exercising a leadership role in the drug transactions.

### D.

Having disposed of Washington's challenges to his indictment, the sufficiency of the evidence against him, and his sentencing enhancement, we now reach Washington's final two arguments. Each stems from the 100:1 ratio contained in U.S.S.G. § 2D1.1. Washington contends that the 100:1 ratio: (1) provides a ground for downward departure at sentencing under U.S.S.G. § 5K2.0;[7] and (2) is unconstitutional.

### 1.

■ Washington argued at sentencing that his "offense level should be substantially reduced as a result of th[e sentencing] disparity between powder cocaine and 'crack'

---

6. Section 3B1.1(c) provides that the court may enhance the offense level by two "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." U.S. Sentencing Guidelines Manual § 3B1.1(c) (1995).

7. Section 5K2.0 reads:

[T]he sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

cocaine." The district court refused to grant Washington a downward departure based upon the 100:1 ratio. Washington asserts that the district court erroneously concluded that it lacked the authority to grant such a downward departure while the government contends that the district court merely exercised its discretion in refusing to depart downward.

We need not address the underlying rationale for the district court's refusal to depart downward in this case. Regardless of whether this refusal was premised upon the district court's lack of authority to depart· downward under the Sentencing Guidelines based upon the 100:1 ratio, *see United States v. Herron,* 97 F.3d 234, 239 (8th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 998, 136 L.Ed.2d 877 (1997) (100:1 ratio "not a basis upon which a court may rely to depart downward under USSG 5K2.0"), or merely a discretionary refusal to do so, *see United States v. Isom,* 992 F.2d 91, 94 (6th Cir.1993) (discretionary refusal by district court to grant a downward departure under U.S.S.G. § 5K2.0 is unreviewable by this Court), this decision was not erroneous.

2.

■ Washington's final challenge presents a constitutional question for our review. He contends that the 100:1 ratio violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, as well as the Cruel and Unusual Punishment Clause of the Eighth Amendment. Washington also maintains that differing interpretations of the term "cocaine base" render the Sentencing Guidelines unconstitutionally vague. These constitutional challenges to Washington's sentence present questions of law over which we exercise *de novo* review. *United States v. Knipp,* 963 F.2d 839, 843 (6th Cir.1992).

This court has previously heard and rejected each constitutional challenge Washington presents to the 100:1 ratio. *United States v. Smith,* 73 F.3d 1414, 1419 (6th Cir.1996) (Jones, J., concurring) (cataloguing Sixth Circuit cases rejecting constitutional challenges to 100:1 ratio). In *United States v. Pickett,* 941 F.2d 411 (6th Cir.1991), we held that the 100:1 ratio does not violate the substantive component of the Due Process Clause or the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id.* at 418–19. Likewise, in *United States v. Williams,* 962 F.2d 1218, 1227 (6th Cir.1992), we rejected an equal protection challenge to the ratio brought under the Fifth Amendment. In *United States v. Levy,* 904 F.2d 1026, 1033 (6th Cir.1990), we rejected a claim that the term cocaine base was unconstitutionally vague. In both *Pickett* and *Williams,* we applied the rational basis test in upholding the 100:1 ratio. *Pickett,* 941 F.2d at 418 (Congress did not act arbitrarily or irrationally in enacting ratio); *Williams,* 962 F.2d at 1227 (ratio reasonably related to legitimate end). The reasoning and holdings of these cases foreclose any constitutional argument Washington may present. *See* Sixth Circuit Internal Operating Procedures § 22.4.1 (June 12, 1991) (panel cannot overrule decision of prior panel); *Smith,* 73 F.3d at 1418.

Undaunted by these precedents, Washington urges this panel to revisit our prior decisions in light of the continuing dialogue between Congress and the Sentencing Commission spurred by a book-length report submitted by the Sentencing Commission to Congress in February of 1995. United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (1995) [hereinafter *Cocaine Report* ]. The *Cocaine Report* acknowledged the possible greater harms to society which crack cocaine poses versus powder cocaine.[8] The Sentencing Commission also noted that the 100:1 ratio "is a

---

8. The factors cited by the Sentencing Commission as indicative of the greater danger to society that crack cocaine poses versus powder cocaine are: (1) the possible greater risk of psychological addiction to crack cocaine than powder cocaine; (2) the fact that crack cocaine may be sold inexpensively and in more potent quantities than powder cocaine; (3) the higher correlation between crack cocaine and systemic violence; and (4) the increasing number of young people involved in its distribution of crack cocaine. *Id.* at 195. The Commission noted that these factors could lead a "policymaker [to] infer that crack cocaine poses greater harms to society than does powder cocaine." *Id.*

primary cause of the growing disparity between sentences for Black and White federal defendants," *id.* at 163, and, despite crack cocaine's potential harms, found that the evils of crack cocaine "do not approach the level of a 100–to–1 quantity ratio." *Id.* at xiv. As a result, the Sentencing Commission strongly recommended against the 100:1 ratio. *Id.* at 198.

On May 1, 1995, the Sentencing Commission voted 4–3 to propose an amendment to Congress replacing the 100:1 ratio in favor of a 1:1 ratio. Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed.Reg. 25074 (May 10, 1995). Absent Congressional action, this amendment would have taken effect on November 1, 1995. *Id. See also* 28 U.S.C. § 994(p) (specifying amendment process). Congress, however, rejected the proposed amendment and instead directed the Sentencing Commission to propose an alternate "revision of the drug quantity ratio of crack cocaine to powder cocaine." Pub.L. No. 104–38, 109 Stat. 334 (October 30, 1995).

Washington's constitutional challenges rely heavily upon the *Cocaine Report* and Congress's decision to reject the Sentencing Commission's proposed elimination of the 100:1 ratio. He acknowledges our prior case-law, but contends those cases no longer provide precedential value because Congress's rejection of the proposed amendment, in light of the Sentencing Commission's explicit recognition of the racially disparate impact of the 100:1 ratio, requires this Court to adopt strict scrutiny, rather than rational basis, review.

■■■ Washington's argument, although creative, fails in light of our prior precedent. In order to find merit in Washington's position, this panel would be required to revisit the rationales behind our prior circuit precedents upholding the 100:1 ratio. "This, we are forbidden to do." *Smith,* 73 F.3d at 1418.[9] In the Sixth Circuit, as well as all other federal circuits, one panel cannot overrule a prior panel's published decision. Sixth Circuit Internal Operating Procedure § 22.4.1 (June 12, 1991). "The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Secretary of Health and Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985). This case presents no such situation. The Supreme Court has not addressed the 100:1 ratio since Congress's rejection of the proposed amendment, this Court has not ruled en banc on the issue, and the law remains unaltered. Treatment of crack cocaine offenders under the Sentencing Guidelines remains unchanged since we addressed and rejected each and every constitutional challenge Washington presents to the 100:1 ratio.

Based upon our prior precedent and our inability to overrule a prior panel's decision, we reject Washington's constitutional challenges to the 100:1 ratio. In doing so, we note that our decision is consistent with all other circuits that have addressed the constitutionality of the 100:1 ratio following publication of the *Cocaine Report* and Congress's rejection of the proposed amendment. *United States v. Jackson,* 84 F.3d 1154, 1161 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct.

9. In *United States v. Smith,* 73 F.3d 1414 (6th Cir.1996), we rejected an argument nearly identical to Washington's. The appellant in *Smith* argued that prior Sixth Circuit precedent no longer applied "in light of new scientific evidence which suggests that there is no meaningful distinction between crack cocaine and powder cocaine." *Id.* at 1417. The panel in *Smith* soundly rejected that argument and instead relied upon prior Sixth Circuit precedent in refusing to address appellant's constitutional challenges to the 100:1 ratio. *Id.* at 1417–18. The panel in *Smith* noted that this "new evidence" did not allow for review of prior panels' decisions. *Id.*

The only difference between *Smith* and this case is the publication of the *Cocaine Report* and Congress's decision to reject the Sentencing Commission's proposed amendment. Neither action allows us to review our prior decisions in this area. *Salmi,* 774 F.2d at 689 (intervening Supreme Court precedent or en banc review required to overrule prior panel's decision). *See also United States v. Welch,* 97 F.3d 142, 154 (6th Cir.1996) (relying upon *Salmi* to reject, post-*Cocaine Report,* a defendant's challenge to the Sentencing Guidelines based upon the 100:1 ratio).

445, 136 L.Ed.2d 341 (1996) ("We do not agree that the Commission's report, or Congress's decision to reject it, affects the precedential value of our ruling that Congress had a rational basis for the 100:1 ratio."); *United States v. Carter*, 91 F.3d 1196, 1198–99 (8th Cir.1996) (Congress did not act with discriminatory purpose in rejecting Sentencing Commission's proposed amendment; instead, the rejection was rationally related to a legitimate government purpose); *United States v. Teague*, 93 F.3d 81, 85 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 708, 136 L.Ed.2d 629 (1997) ("The 100:1 ratio had a rational basis when enacted, and the Commission's continuing consideration of the appropriate sentencing scheme for crack and powder cocaine offenses counsels against judicial intervention."); *United States v. Burgos*, 94 F.3d 849, 877 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997) (upholding the 100:1 ratio against equal protection challenge in light of Congress's rejection of the proposed amendment).

For the foregoing reasons, the decision of the district court is **AFFIRMED**.

JONES, Circuit Judge, concurring in part and dissenting in part.

I join the opinion of the court in section I and sections II(A), II(B), and II(C). However I write separately because I once again feel obligated to express my concerns regarding the 100:1 sentencing ratio for crack and powdered cocaine ("100:1 ratio") that still exists in both statutory law and the Sentencing Guidelines. I recognize that this court has rejected a variety of constitutional challenges to the 100:1 ratio, but I still believe that we as judges should "no longer remain wedded to that which experience shows is neither rational nor fair." *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir.1996) (Jones, J., concurring).

1. On July 3, 1997, Attorney General Janet Reno and General Barry McCaffrey, Director of National Drug Policy, after reviewing the Sentencing Commission's *Cocaine Report*, adopted its recommendations and forwarded their conclusions to the President. *See* N.Y. Times, July 22, 1997 at A1. In doing so, they cautioned that

The Sentencing Commission has conclusively addressed the issue of whether there is justification for harsher penalties for crack than for powder cocaine, a policy that in practice has treated African–Americans more severely than whites, and has answered this question in the negative. The Sentencing Commission's conclusions have recently been adopted by the President, the Attorney General and General Barry McCaffrey, Director of National Drug Policy.[1]

In light of these recent developments, of which judicial notice should be taken, I must again emphasize that because the Sentencing Commission is analogous to a federal agency it is entitled to the deference accorded the same. It is well settled that an agency's interpretation of its own regulations receives "controlling weight" unless it would violate the Constitution or a federal statute, or is inconsistent with the regulation. *See Stinson v. United States*, 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) ("[p]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). Thus, the Sentencing Commission's complete rejection of the 100:1 ratio is, in this instance, entitled to "controlling weight." As I noted in *United States v. Gaines*, this remains clearly consistent with the Supreme Court's long history of upholding an agency's interpretation of its own rules. *See, United States v. Gaines*, 122 F.3d 324, 335 (6th Cir.1997). I regret that the majority feels it is necessary to depart from this basic principle of administrative law.

Moreover, as proof of the racial unfairness of the present law continues to mount, the apparent ease by which policy makers, and even the judicial system, are able to disre-

"[w]e cannot turn a blind eye ... to the corrosive effect this [law] has had on ... the effective administration of justice." *Id.* On July 22, 1997, the President announced his acceptance of their conclusions. *See* L.A. Times, July 23, 1997 at A24.

gard the racial discrimination perpetuated by this law and now recognized by the Sentencing Commission, the Attorney General and the President, is indeed disturbing. In 1996, for example, African–Americans made up 85.8% of crack cocaine offenders, while a mere 4.8% of white federal offenders were prosecuted for crack cocaine. *United States Sentencing Commission, 1996 Sourcebook of Federal Sentencing Statistics* 47 (1997). This racial disparity will not disappear simply by ignoring it; rather, the recommendations of the Sentencing Commission should be heeded by those entrusted with the administration of our laws. I urge the entire court to hear this case *en banc* and accord the requisite deference to the conclusions of the Sentencing Commission found in the *Cocaine Report.*

I must again reiterate, that I am not calling for a reduction in the stiffness of drug crimes, but only seek equality in sentencing. I recognize that drugs continue to plague our society and fully support the efforts of law enforcement to reduce its use. Nevertheless, I cannot ignore the fact that, as the Sentencing Guidelines currently exist, the sentences handed down by courts of "justice" are not just. "Blind adherence to rules that have proven ineffective, meaningless and unjust, serves no useful purpose." *United States v. Gaines,* 122 F.3d 324.