**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carl MCDOUGLE; Carl Manns; and**
**Jerry Dean Lewis, Defendants–**
**Appellants.**

Nos. 02–5180, 02–5213, 02–
5220 and 02–5244.

United States Court of Appeals,
Sixth Circuit.

Nov. 13, 2003.

Stephen C. Parker, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, Karen L. Stevens and Jessica Dunsay Silver, U.S. Department of Justice, Civil Rights Division, Washington, DC, for Plaintiff–Appellee.

Doris A. Randle–Holt, Office of the Federal Public Defender for the Western District of Tennessee, Michael E. Scholl, The Scholl Law Firm and A. C. Wharton, Jr., Wharton, Wharton & Associates, Memphis, TN, for Defendants–Appellants.

BEFORE: SUHRHEINRICH, COLE and ROGERS, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendants Carl McDougle, Carl Manns, and Jerry Dean Lewis engaged in a conspiracy to discipline residents of a center for mentally retarded and physically impaired persons by beating and physically abusing them. On February 15, 1995, four of the center's employees, including Defendants, beat resident Anthony Monds, who died as a result. Defendants Lewis and Manns pleaded guilty to willfully depriving another of federal rights under color of law resulting in death, in violation of 18 U.S.C. §§ 242 and 2. They now appeal the calculation of their sentences under the Sentencing Guidelines. McDougle was convicted by a jury of one count of conspiracy to violate civil rights resulting in death, in violation of 18 U.S.C. § 241, and one count of willfully violating civil rights resulting in death, in violation of 18 U.S.C. § 242 and 2. McDougle raises several trial-based errors. We **AFFIRM** the judgment of the district court in all respects.

## I. Background

Lewis, Manns, and McDougle were employed by the State of Tennessee as "development technicians" (DTs) at Arlington Development Center, which provides residential and out-patient services to mentally retarded and physically impaired adults and children. Over the course of seven to ten years, several DTs, including Defendants, regularly abused residents of an adult male unit at Arlington in a conspiracy to punish residents for refusing to comply with various orders or to induce future compliance. On February 15, 1995, Defendants administered such a beating to Anthony Monds, a severely mentally-retarded deaf-mute resident of Arlington, because Monds had repeatedly refused to keep his shirt on as directed. Lewis admitted that he held Monds while Manns and another DT struck Monds in the abdomen and

chest. McDougle acted as a lookout for part of the beating, and also hit Monds several times in the abdomen with his fist. Manns admitted that he delivered the hardest blows to Monds' abdomen. Although Monds was visibly ill during the day, none of the defendants told the nursing staff that Monds had been beaten that morning. As a result, the nurses misdiagnosed Monds as suffering from a gastrointestinal ailment and treated him accordingly. Monds died that evening. An autopsy revealed the cause of death as internal bleeding and torn liver and intestinal membranes as a direct result of blunt force trauma to Monds's abdomen.

The State of Tennessee indicted McDougle for second-degree murder in the spring of 1995, but dismissed the charges in September, 1998. In April, 1999, the U.S. Attorney's Office for the Western District of Tennessee and the Criminal Section of the Civil Rights Division learned from the Civil Rights Division's Special Litigation Section, which had been monitoring Arlington under a civil consent decree, that Tennessee had dismissed the indictments against McDougle. Thereafter, the Criminal Section and the U.S. Attorney's Office, along with the FBI, opened their own investigation into the death of Monds.

The United States presented its first witness to the grand jury in October, 1999. On February 15, 2000, the federal grand jury returned the first indictment in this case. Count one charged Manns, McDougle, and another DT with aiding and abetting each other under color of law to willfully assault Monds, thereby depriving Monds of his due process right to be free from the use of unnecessary and excessive force while residing in a state-operated facility, in violation of 18 U.S.C. §§ 242 and 2. Count two charged them with willfully depriving Monds of his right to receive necessary and appropriate medical care and treatment, in violation of 18 U.S.C. §§ 242 and 2. Arrest warrants issued the same day.

A second indictment was issued on September 14, 2000. Count one charged Lewis, Manns, McDougle, and a fourth DT with conspiring to punish, discipline, and intimidate residents of Arlington through beatings and assaults to maintain compliance, beginning in April 1988, and ending with Monds' death on February 15, 1995, in violation of 18 U.S.C. § 241. Count two of the second indictment charged Lewis with willfully failing to provide necessary and appropriate medical care and treatment for Monds, resulting in bodily injury and death, thereby depriving him of liberty without due process of law, in violation of 18 U.S.C. §§ 242 and 2.

On May 14, 2001, Lewis pleaded guilty to count two of the second indictment. On May 15, 2001, Manns pleaded guilty to count one of the first indictment. The other charges against each of them were dropped. McDougle's trial began on May 10, 2001. Both Lewis and Manns testified at McDougle's trial. Both admitted that they, along with McDougle, participated in the beatings of Monds, and that they had conspired to use such beatings to obtain compliance from Arlington residents. The jury returned a verdict on May 23, 2001, finding McDougle guilty under count one of the first indictment for deprivation of rights under color of law resulting in death under § 242, and under count one of the second indictment for conspiracy to violate civil rights resulting in death under § 241. McDougle was found not guilty under count two of the first indictment for failing to provide necessary and appropriate medical treatment for Monds under 18 U.S.C. § 242.

The district court sentenced Lewis and Manns under U.S. Sentencing Guidelines Manual § 2H1.1(a)(1) (Nov.2000), which di-

rects that the offense level "from the offense guideline applicable to any underlying offense" apply. USSG § 2H1.1(a). Over Defendants' objections, the district court determined that second degree murder, rather than involuntary manslaughter, was the underlying offense resulting in a higher base offense level.[1] The district court ultimately sentenced Lewis to a term of 60 months' imprisonment and Manns to 135 months' imprisonment. The district court sentenced McDougle to a term of 15 years imprisonment.

On appeal, Lewis and Manns challenge the district court's use of the guideline for second degree murder instead of involuntary manslaughter as the underlying offense conduct. McDougle alleges that the district court erred in denying his pretrial motions to dismiss the indictment on the basis of (1) pre-indictment delay, (2) post-indictment delay, (3) vindictive prosecution, (4) duplicitous pleadings, and (5) failure to state a crime. McDougle also asserts that the district court should have granted his motion for acquittal, or in the alternative, a new trial.

## II. Lewis and Manns' Appeal

Lewis and Manns contend that the district court erred in applying the second degree murder guideline, § 2A1.2, as the underlying offense, rather than the involuntary manslaughter guideline, § 2A1.4. Our review of the district court's application of the sentencing guidelines to the facts is deferential. 18 U.S.C. § 3742(e);

*Buford v. United States*, 532 U.S. 59, 63–66, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001); *United States v. Webb*, 335 F.3d 534, 536–37 (6th Cir.2003); *United States v. Jackson-Randolph*, 282 F.3d 369, 389–90 (6th Cir.2002) (holding that *Buford* requires a deferential standard of review in applying the Sentencing Guidelines in cases involving fact-bound determinations).

Section 2H1.1(a) of the Sentencing Guidelines directs the district court to apply the greater of 12 points or "the offense level from the offense guideline applicable to any underlying offense." *Id.* The commentary explains that "offense guideline applicable to any underlying offense" means "the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law." § 2H1.1 cmt. n. 1. The offense conduct also includes "all acts and omissions committed, aided, [or] abetted ... by the defendant," and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *See* § 1B1.3(1)(A)-(B).

The underlying conduct established by the offense of conviction is the homicide of Anthony Monds. Under federal law, second degree murder requires malice aforethought. *See* 18 U.S.C.A. § 1111(a) (West 2000); *United States v. Milton*, 27 F.3d 203, 206 (6th Cir.1994).[2] Malice aforethought may be established "by evidence of conduct that is reckless and wanton, and a gross deviation from a reasonable stan-

---

1. This set the base offense level at 33, *see* USSG § 2A1.2 (second degree murder), rather than 10 or 14. *See* USSG § 2A1.4 (involuntary manslaughter; setting base offense level at 10 if the underlying conduct was "criminally negligent" or 14 if the conduct was "reckless"). Lewis' total offense level was set at 39, with a recommended guideline range of 262 to 327 months. Manns' total offense level was set at 41, with a recom-

mended guideline imprisonment range of 324 to 405 months.

2. A plain reading of the statute would suggest that second degree murder requires merely malice. However, *Milton* states that second degree murder requires "malice aforethought." This appears to be an oversight, since the definition that follows defines simple malice.

dard of care, of such nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Milton*, 27 F.3d at 206 (internal quotations and citations omitted). *See also United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir.1995) (applying *Milton* test). Manslaughter, by contrast, is "the unlawful killing of a human being without malice." 18 U.S.C.A. § 1112(a) (West 2000). Involuntary manslaughter is an unlawful killing "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." *Id.*

■ The record supports the district court's holding. The presentence reports and Lewis' and Manns' own testimony establish that both were aware that Monds was at a substantial risk of serious bodily injury. Lewis admitted that he restrained Monds while Manns, McDougle, and another DT beat him in the abdomen. Manns admitted beating Monds. Both Lewis and Manns acknowledged that, shortly after the beating it was clear that Monds was hurt; Manns testified that Monds was doubled over in pain clutching his stomach and could not maintain his balance very well, and Lewis testified that he knew Monds was seriously hurt. Lewis admitted that he denied any knowledge of Monds' injuries when asked by the nurses, and sat by as the nurses erroneously medicated Monds for a digestive ailment. Manns admitted that he did not tell anyone what happened to Monds. From their substantial efforts at covering up Monds' injuries, one can easily infer that Manns and Lewis were aware that they were placing Monds at a substantial risk of serious bodily injury.

Manns contends that he was not aware of a substantial risk of death because phys-ical abuse had been used systematically at Arlington, and there was no evidence that any other resident had died as a result of his injuries. Lewis admits that he failed to provide medical care to Monds, but that this failure does not rise to the level of malice aforethought. Both arguments must be rejected. Manns' argument fails because malice may be shown by establishing that the defendant's conduct "grossly deviate[d] from the standard of care to such an extent that a jury could conclude that he must have been aware of a serious risk of death *or serious bodily injury.*" *Sheffey*, 57 F.3d at 1430 (emphasis added); *see also Milton*, 27 F.3d at 208 (stating that "from his actions we infer that [the defendant] must have been aware of a risk of death or serious bodily injury"). Lewis' argument is equally meritless. Lewis remained silent as Monds became increasingly ill and allowed the nurses to treat Monds for the wrong condition, despite full knowledge of the true nature of Monds' maladies. In sum, the district court did not err in utilizing the offense guideline for second degree murder.

### III. McDougle's Appeal

### A. Pre-indictment Delay

■ McDougle alleges that his Fifth Amendment Due Process rights were violated by a five year pre-indictment delay by federal prosecutors and challenges the district court's denial of his motion to dismiss based on pre-indictment delay. McDougle alleges prejudice based upon the death of potential witness David Freeman, the loss of Arlington records showing the whereabouts of employees, and the deterioration or loss of his recollections and personal records maintained for his defense. We review the denial of a motion to dismiss based upon preindictment delay for an abuse of discretion and the related questions of fact for clear error. *United*

*States v. Scott,* 579 F.2d 1013, 1014 (6th Cir.1978). Constitutional challenges are reviewed de novo. *United States v. Knipp,* 963 F.2d 839, 843 (6th Cir.1992).

The test for unconstitutional pre-indictment delay is whether both (1) the delay caused substantial prejudice to the defendant's right to a fair trial, and (2) the delay was an intentional device by the government to gain a tactical advantage over the accused. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Rogers,* 118 F.3d 466, 475–76 (6th Cir.1997); *United States v. Brown,* 959 F.2d 63, 66 (6th Cir.1992); *United States v. DeClue,* 899 F.2d 1465, 1469 (6th Cir.1990).

The record supports the district court's finding that the Government had a valid reason for delaying prosecution and did not delay in order to gain a tactical advantage. The Government presented affidavits and testimony establishing that it delayed prosecution based upon the Department of Justice's *Petite* policy of avoiding concurrent criminal prosecutions by state and federal governments. *See Petite v. U.S.,* 361 U.S. 529, 530, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). The Government demonstrated that as soon as it learned in April 1999 that the state had dropped charges, it began its own investigation. The grand jury convened in October 1999, and the first indictments issued in February 2000, in a case involving multiple defendants and a conspiracy that spanned a number of years. Contrary to McDougle's assertion, the United States' initiation of civil charges as early as 1992 does not undermine the Government's position. The civil charges against the State of Tennessee focused on inadequate treatment, care and staff training, not criminal assaults on residents by staff. In short, McDougle has simply not shown that the

Government acted in bad faith or with dilatory purpose.

McDougle also failed to explain what deceased witness David Freeman would have said, other than to absolve McDougle of any involvement in a different beating incident. Such a general assertion does not establish actual prejudice. *See Rogers,* 118 F.3d at 475 (holding that a defendant cannot show actual prejudice from the death of a potential witness unless he indicates what the witnesses's testimony would have been, and that the substance of that testimony was not otherwise available). McDougle's allegation of unavailability of records is equally unavailing. McDougle obtained extensive records from Arlington during discovery, which included information about staff assignments and patient location. In any event, it is undisputed that McDougle was working on the day of Monds' death in Monds' wing. Finally, McDougle's general allegation of fading memories is without merit. *See, e.g., Marion,* 404 U.S. at 326 (noting that it is not enough to rely on the "possibility of prejudice inherent in any extended delay"). In short, McDougle's due process claim based on pre-indictment delay is without merit.

### B. Post–Indictment Delay

█ McDougle also alleges he was denied his Sixth Amendment right to a speedy trial. This Court reviews *de novo* a defendant's Sixth Amendment Speedy Trial claim, and reviews for clear error the district court's factual findings. *United States v. Schreane,* 331 F.3d 548, 552 (6th Cir.2003); *United States v. O'Dell,* 247 F.3d 655, 666 (6th Cir.2001).

McDougle's claim lacks merit because it is based upon the erroneous assumption that the relevant trigger point was the state indictment. McDougle's Sixth Amendment right to a speedy trial was initiated upon the filing of his federal in-

dictment on February 15, 2000, the point at which he became an accused on the federal charges, not the date of his state court indictment. *See Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Wallace*, 326 F.3d 881, 885 (7th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 265, 157 L.Ed.2d 191 (2003) (No. 03–5377). The fifteen month delay between the federal indictment and trial is attributable to the complexity of the case and the numerous pretrial motions. *Cf. Schreane*, 331 F.3d at 559 (holding that thirteen and one-half month delay attributable to government's negligence was not presumptively prejudicial; and cases cited therein). The district court properly rejected this claim.

## C. Vindictive Prosecution

■ McDougle next challenges the district court's refusal to dismiss on the basis of vindictive prosecution. We review that decision for abuse of discretion. *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir.2001).

The first indictment charged Manns, McDougle, and another DT under § 242. McDougle argues that the Government charged him with conspiracy in the second indictment, rendered seven months after the first indictment, to penalize him for exercising his right to trial and for refusing to cooperate with the investigation of Monds' death. In support, McDougle points to the fact that because the Government had been investigating Arlington since 1992, it would have known the facts supporting the second indictment at the time of the first indictment.

"A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991); *United States v. Andrews*, 633 F.2d 449, 453–55 (6th Cir.1980). The *prima facia* case for vindictive prosecution requires a showing that the prosecutor had a "stake" in deterring the exercise of the defendant's rights, and that the conduct of the prosecutor was unreasonable. *Anderson*, 923 F.2d at 453–54 (discussing *Andrews*, 633 F.2d at 453–55). Furthermore, the Supreme Court has stated that in a pretrial context, reindictment on a more serious charge does not present the same concern of prosecutorial vindictiveness that arises when a prosecutor reindicts a defendant who has successfully exercised the right to obtain a new trial. *United States v. Goodwin*, 457 U.S. 368, 382, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

The district court did not abuse its discretion in denying McDougle's motion to dismiss for vindictive prosecution. Prosecutorial vindictiveness is not established simply because a defendant exercised a constitutionally protected right and was subsequently indicted for an additional offense. The Government demonstrated that it did not have sufficient information to charge the conspiracy count until several months after the first indictment issued. *See id.* (noting that in the pretrial context, the likely explanation is that the prosecutor uncovers additional information, or that her assessment of the legal significance of the information possessed had not yet crystallized). McDougle offered no evidence to counter this explanation. Further, the second indictment named three other defendants in addition to McDougle and contained a second count not naming McDougle. As the district court held, the explanation of *Goodwin* applies here. This contention is without merit.

## D. Color of Law

■ McDougle also appeals the district court's denial of his motion to dismiss his

charges under 18 U.S.C. § 242 based on failure to state a crime. McDougle argues that because he was a lower-level "civilian" state employee, he could not have acted under "color of law" as required by the language of § 242. The district court held that a staff employee of a state facility acts under color of law when he assaults residents of the facility. We review this issue of statutory interpretation *de novo. United States v. DeZarn,* 157 F.3d 1042, 1046 (6th Cir.1998).

The "color of law" element of § 242 is satisfied when a defendant abuses or misuses power he has by virtue of his government employment. *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Nothing in the text of § 241 or § 242 limits their application to violations of federal rights by commissioned law enforcement officers. McDougle fails to cite, nor can we find, any cases to support his argument. Furthermore, the Supreme Court has indicated that "color of law" requirements in other statutes can be met outside of the law enforcement or corrections context, *see Youngberg v. Romeo,* 457 U.S. 307, 315–16, 319, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *cf. Meador v. Cabinet for Human Res.,* 902 F.2d 474, 476 (6th Cir.1990) (holding that Fourteenth Amendment protects children in state custody from abuse in state regulated foster care homes), and the Third and Eighth Circuits have upheld § 242 convictions of civilian state employees in contexts similar to the current case. *See, e.g., United States v. Dise,* 763 F.2d 586, 588 (3d Cir.1985) (state mental hospital employee); *United States v. Jackson,* 235 F.2d 925, 927 (8th Cir.1956) (prison guard at state operated prison). McDougle's other contentions on this issue are equally without merit.

### E. Duplicity

■ McDougle argues that the district court should have dismissed count one of the second federal indictment against him because of duplicity. We review the district court's decision not to dismiss the indictment for abuse of discretion. *United States v. Washington,* 127 F.3d 510, 512–13 (6th Cir.1997); *United States v. Overmyer,* 899 F.2d 457, 465 (6th Cir.1990).

An indictment is duplicitous if it charges separate crimes in a single count. *Washington,* 127 F.3d at 513. However, the mere existence of "multiple theories of liability or multiple factual predicates for violation of a statute does not render the indictment duplicitous." *Id.* (citation omitted).

McDougle alleges that the five overt acts carried out in furtherance of the conspiracy as listed in count one actually represent several separate conspiracies, resulting in confusion to the jury and the possibility that the jury entered a guilty verdict without unanimously agreeing on any single conspiracy. This argument is without merit. The indictment alleged that the object of the conspiracy was "to punish, discipline, and intimidate residents of the Arlington Development Center through beatings and assaults so as to maintain order and gain compliance with employees' instructions." As the district court held, "[t]he five acts listed in count one are not separate and distinct conspiracies, but steps allegedly taken by the defendants to effectuate this single conspiracy." The overt acts are multiple factual predicates and not duplicitous. *See id.*

### F. Motion for Judgment of Acquittal or New Trial

■ McDougle also appeals from the district court's denial of his motion for acquittal or, in the alternative, a new trial. Denial of a motion for acquittal is reviewed *de novo* to determine the sufficiency of the

162

evidence, and denial of a motion for a new trial is reviewed for abuse of discretion. *United States v. Hartsel,* 199 F.3d 812, 815 (6th Cir.1999).

In reviewing the sufficiency of the evidence and whether denial of a motion for acquittal was proper, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Hartsel,* 199 F.3d at 815.

A rational trier of fact could have found that McDougle violated 18 U.S.C. §§ 241 and 242. Manns and Lewis testified that McDougle stood outside of the room as Manns began punching Monds, and that McDougle came into room and beat Monds himself. This evidence is sufficient to support the conclusion that McDougle assaulted Monds, and is therefore guilty as charged. This evidence also supports McDougle's conviction on the conspiracy charge in the second indictment. Furthermore, two former DTs testified that McDougle participated in other beatings. DT Bobby Hughes testified that McDougle served as a lookout while former DT David Freemen beat a resident. DT Wendell Knight testified that McDougle abused residents. As the district court held, this evidence was sufficient to support the conspiracy conviction.

McDougle's other alleged errors in support of his motion for new trial or judgment of acquittal are without merit and do not warrant further discussion.

## IV. Conclusion

For all of the foregoing reasons, the judgments of the district court as to De-fendants Lewis, Manns, and McDougle are **AFFIRMED.**