**NOT RECOMMENDED FOR  FULL-TEXT PUBLICATION**

File Name: 11a0075n.06

**No.  09-3781**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 04, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

>    Plaintiff-Appellee,

v.

EDMOND  W.  PLUNK, aka Edmond Plunk,
aka Donta Wright,

>    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____/

**BEFORE:**    **SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.**

>    **CLAY, Circuit Judge.**  Defendant Edmond Plunk, who was convicted of conspiracy to
distribute and to possess with intent to distribute more than 1,000 grams of heroin in violation of 21
U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, appeals his sentence of 144 months of incarceration,
alleging that the district court erred when it applied a two-level enhancement under U.S.S.G. § 3B1.1
based on his alleged role in the offense.  For the reasons set forth below, we **AFFIRM**.

**BACKGROUND**

On April 21, 2008, Defendant Edmund Plunk ("Plunk") was arrested, and on May 6, 2008, he was indicted on two counts of conspiracy to distribute and to possess with intent to distribute more than 1,000 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and one count of forfeiture of currency in the amount of $53,630 under 21 U.S.C. §§ 853(a)(1) and (a)(2). Plunk's involvement in heroin trafficking came to light following a Drug Enforcement Administration ("DEA") investigation into the narcotics activities of a man named Ronald Kelsor, whom Plunk allegedly supplied heroin. After several months of wiretapping and surveillance, Plunk, Kelsor, and twenty-four others were arrested and indicted as part of the DEA sting.

On October 24, 2008, Plunk pleaded guilty to one count of conspiracy to distribute more than 1,000 grams of heroin and one count of forfeiture, in exchange for the dismissal of the remaining count. Pursuant to the plea agreement, Plunk also stipulated to a two-level adjustment under U.S.S.G. § 3B1.1 for playing an "aggravating role" in the offense, and a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing firearms in connection with a drug conspiracy. In turn, the government stipulated that it would recommend a downward departure under U.S.S.G. § 5K1.1 if Plunk provided substantial assistance to authorities.

Plunk's sentencing hearing was held on June 19, 2009. During sentencing, Plunk objected to the application of the stipulated § 3B1.1 enhancement on grounds that he had agreed to it under duress. Plunk also asserted that as an individual who had been found to have an IQ of 52, and who received disability benefits for mental retardation, he lacked the capacity to exert an aggravating leadership role as required by the provision. The district court sustained Plunk's objection related

to duress, but nevertheless imposed a two-level enhancement under § 3B1.1(c) after finding by a preponderance of evidence that Plunk had played a supervisory role in the drug conspiracy by directing the activities of his co-felon, Mandell Cantrell.

Evidence presented during the sentencing hearing revealed that Plunk and Cantrell had an evolving relationship. Initially, Plunk functioned as Cantrell's heroin supplier, but soon after they became partners in a drug-trafficking enterprise. Using an alias, Plunk leased a house in Columbus, Ohio that he and Cantrell jointly used to hide drugs and firearms. Plunk and Cantrell maintained separate operations and lists of customers; however, after Plunk was pulled over during a March 1, 2008 traffic stop, Plunk became suspicious that his activities were being monitored and relied on Cantrell more heavily. Between March 1, 2008 and March 27, 2008, Cantrell leased rental cars for Plunk and used them to chauffeur Plunk to several drug transactions. In addition, Cantrell personally delivered heroin to Plunk's customers on at least one occasion. In return, Plunk paid Cantrell with a portion of his proceeds, and offered to sell Cantrell's remaining supply of heroin and allow him to keep the profit.

Finding by a preponderance of evidence that Plunk had exerted supervisory authority over Cantrell, the district court cited Plunk and Cantrell's activities during the month of March 2008, as well as wiretapped phone conversations where Plunk was heard directing the activities of Cantrell in delivering heroin and describing Cantrell as "his man." Examining the relationship between the parties, the Court found that a two-level aggravating role enhancement was justified under U.S.S.G. § 3B1.1(c), stating:

> Mr. Plunk was the one that provided the heroin. He directed Mr. Cantrell in the
> delivery of the heroin. It would be my conclusion that he also chose Mr. Cantrell and

3

directed him in driving him on the occasions when he made deliveries of heroin to Mr. Kelsor in the rental vehicles. Because he was the supplier of the heroin, he received a larger share of the fruits of the sales to Mr. Kelsor that he directed Mr. Cantrell to assist him in making. So, based on all of the evidence, the Court is satisfied that he did have a supervisory role and that the enhancement is appropriate.

(Sentencing Tr. at 135.)

Following the district court's § 3B1.1 determination, Plunk moved for a downward departure under U.S.S.G. § 5K2.13, which provides for a departure when a defendant's significantly reduced mental capacity contributes substantially to the commission of the offense. In support of this motion, Plunk cited evidence of his mental retardation and low IQ. The district court held that such a departure was unwarranted because despite his IQ, Plunk orchestrated a sophisticated drug-trafficking operation while free of suggestion or compulsion. However, the court found that Plunk's mental retardation was relevant under 18 U.S.C. § 3553(a), and used it to support a variance from the recommended guidelines sentence of 185 months. Plunk was ultimately sentenced to a term of incarceration of 144 months.

Challenging only the district court's application of a two-level § 3B1.1 enhancement, Plunk now brings this timely appeal.

## DISCUSSION

### I. The District Court's Application of a Two-Level Sentence Enhancement under § 3B1.1

#### A. Standard of Review

This Court has reserved judgment as to whether a district court's application of § 3B1.1 should be reviewed *de novo*, or deferentially for clear error. *See, e.g., United States v. Lalonde*, 509 F.3d 750, 763–64 (6th Cir. 2007) (internal citations omitted); *United States v. Moncivais*, 492 F.3d

652, 660 (6th Cir. 2007) ("We have not settled the question of what standard governs review of a sentencing enhancement under U.S.S.G. § 3B1.1."); *United States v. Young*, 553 F.3d 1035, 1052–53 (6th Cir. 2009) (summarizing the unsettled state of the law). However, this case does not provide an opportunity for resolution of this issue because we conclude that the district court properly applied the sentencing enhancement, regardless of which standard of review applies.

**B.     Analysis**

Pursuant to § 3B1.1, the United States Sentencing Guidelines provide for a sentencing enhancement wherever a defendant "exerted control over at least one individual within a criminal organization." *Lalonde*, 509 F.3d at 765. A defendant who is found culpable under U.S.S.G. § 3B1.1 could have his or her guideline sentence enhanced two to four levels. A four-level sentencing enhancement is appropriate where a defendant acted as " an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A three-level enhancement is appropriate where a defendant acted as "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more persons or was otherwise extensive." *Id.* § 3B1.1(b). Finally, a two-level enhancement is proper where a defendant acted as an "organizer, leader, manager, or supervisor in any criminal activity of one or more participants." *Id.* § 3B1.1(c), cmt. n.2.

In determining whether a defendant qualifies for a § 3B1.1 enhancement, a sentencing court considers factors including, but not limited to, whether the defendant exerted "decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the

planning phase of the criminal venture, or exercised control or authority over at least one accomplice." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009).

In the instant case, the district court applied a two-level enhancement after finding that Plunk directed the activities of Cantrell by recruiting Cantrell to obtain rental cars for him, drive him to drug sales, and deliver heroin on his behalf. As further evidence of a supervisory relationship, the district court also cited the fact that Plunk referred to Cantrell as "my man" when speaking to his customers and coordinating Cantrell's deliveries.

Having reviewed the record, we believe that the district court acted well within its discretion when it found that Plunk played an aggravating role in the offense and applied a two-level sentencing enhancement under U.S.S.G. § 3B1.1. Under the caselaw of this Circuit, recruiting individuals to complete narcotics deliveries, even on a one time or temporary basis, constitutes supervisory conduct that warrants a § 3B1.1 enhancement. *See, e.g.*, *United States v. Elledge*, 344 F.App'x 119, 126–27 (6th Cir. Aug. 25, 2009) (finding enhancement proper where defendant directed courier); *United States v. Munoz,* 233 F.3d 410, 416 (6th Cir. 2000) (finding § 3B1.1 enhancement proper where defendant "made arrangements for the courier to deliver the drugs," was in "repeated contact," and "played a role in coordinating the delivery and payment [for drugs]"); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 595–96 (6th Cir. 1998) (same). Further, where, as here, a defendant directs an individual to act as a drug courier on his behalf, this Court has deemed it irrelevant whether the parties had preexisting ties or a co-equal relationship prior to the supervisory conduct. *See Vasquez,* 560 F.3d at 473 (finding § 3B1.1 enhancement proper where defendant solicited his

6

brother to make deliveries); *United States v. Washington*, 127 F.3d 510, 515 (6th Cir. 1997) (§ 3B1.1 enhancement proper where courier was defendant's girlfriend).

Plunk cites *United States v. Talley*, Nos. 97-1938, 98-1280, 1999 WL 685938, at *6–7 (6th Cir. Aug. 24, 1999), for the proposition that a § 3B1.1 enhancement is improper in the instant case because statements such as "my man" merely denote trust and friendship, and that he and Cantrell are best understood as buyers and sellers, partners, and co-equals. However, Defendant's reliance on *Talley* is misplaced, as the facts of that case can be easily distinguished. Unlike *Talley,* where a co-felon's statement that he was the defendant's "boy" provided some of the prosecution's only evidence of a supervisory relationship, in the instant case there is an abundance of evidence that Plunk directed the activities of a co-felon. Indeed, as was demonstrated by a preponderance of evidence, Plunk recruited Cantrell to serve as his driver and courier for a series of drug deals, and Cantrell received only a delivery fee while Plunk retained the bulk of proceeds. Accordingly, under both a clear error and a *de novo* standard of review, the district court's decision to apply a two-level enhancement under § 3B1.1 was not improper.

## CONCLUSION

The district court did not err when it applied a U.S.S.G. § 3B1.1 enhancement based on Plunk's aggravating role in the offense. Therefore we **AFFIRM** the judgment of the district court.