NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0677n.06
No. 15-5555

**FILED**
Dec 15, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DURAN WOMBLES, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Duran Wombles pleaded guilty to one count of conspiracy to distribute heroin and one count of being a felon in possession of a firearm. After calculating his advisory guideline range at 210 to 262 months' imprisonment, the district court imposed concurrent terms of 200 and 120 months, respectively. Wombles now appeals, asserting that (1) his guideline calculation erroneously included a "supervisor" enhancement and (2) the court unreasonably failed to consider his disadvantaged childhood when it imposed sentence. We **AFFIRM**.

I

Wombles was indicted as a member of a black-tar heroin distribution ring active in the Eastern District of Kentucky, along with Israel Gonzalez-Pasos, Tamara Wombles, Lauren Summers, and Jesus Lizarraras-Estudillo.

Wombles pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

In his plea agreement Wombles admitted that he was responsible for a kilogram or more of heroin in connection with the conspiracy, which involved Wombles and Summers receiving heroin-containing balloons from their co-conspirators to distribute to retail customers. In January 2014, Wombles lent his truck to a co-conspirator, who drove to Chicago to obtain a "load" of heroin. *Plea Agreement*, R. 222, at 3. Law enforcement discovered the conspiracy through confidential informants and a series of controlled purchases. According to the pre-sentence report, Wombles and Summers met in a drug-treatment program and subsequently developed a romantic relationship and relapsed. Summers accompanied Wombles while he made street-level sales, and on at least one or two occasions she delivered heroin on his behalf, returning the proceeds to him.

Wombles' childhood was, without doubt, horrific. His mother was a drug addict and prostitute who forced her children to witness her sexual encounters with, and steal from, her customers. As children, Wombles and his sister were bartered to their mother's drug dealer, who abused both of them for years. The assistant United States attorney in this case stated that in his quarter century as a prosecutor, Wombles' childhood was among the half-dozen worst he had seen. The district court described Wombles' family situation as "trag[ic]." *Sentencing Tr.*, R. 245, at 40.

This horrific childhood set Wombles on a regrettable path into adulthood. He was introduced to drugs by his family, and by the time he was arrested in the instant case, he was addicted to heroin and had been convicted in Ohio and Kentucky state courts of several serious

offenses, including cocaine possession, heroin trafficking, and receiving stolen property. As a result of these convictions, Wombles was incarcerated for a total of approximately sixteen months. He left school after completing the ninth grade, has not obtained a high-school diploma or equivalent, and until he was indicted in April 2014, led an itinerant lifestyle without steady employment.

II

A

Wombles first challenges the inclusion of a "supervisor" enhancement in the calculation of his guideline range. Under the Sentencing Guidelines, an offender's total offense level may be enhanced if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants . . . ." U.S.S.G. § 3B1.1(b).

Before applying this enhancement to its sentencing calculation, a district court considers several factors, including: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* at App. Note. 4. The Government must prove the factual basis for a disputed adjustment by a preponderance of the evidence. *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir. 1991). As we explained in *United States v. Washington*, district courts are "best situated to determine whether someone is or is not a 'leader' of a conspiracy," and so we review a court's conclusions under § 3B1.1(b) deferentially. 715 F.3d 975, 983 (6th Cir. 2013) (citing *Buford v. United States*, 532 U.S. 59, 66 (2001)).

Wombles received a "supervisor" enhancement based on evidence that on at least one or two occasions he directed Summers to deliver heroin on his behalf—which she did, returning the proceeds to him. Wombles does not dispute that the conspiracy involved five or more participants. Nor does he dispute that on at least one occasion Summers did deliver heroin on his behalf. Rather, he argues that the minimal history of Summers delivering heroin on his behalf is overcome by the fact that they were co-equal romantic and business partners. These transactions, Wombles contends, are appropriately characterized as one partner asking, and the other doing, a favor, rather than as a supervisor-supervisee relationship. In overruling Wombles' objection to the supervisor enhancement, the district court stated that it had considered the factors provided in the application note to § 3B1.1(b) and found that even this limited direction of Summers was sufficient to justify a role adjustment.

On appeal, Wombles cites precedents involving a romantic-partner drug courier and a one-time delivery. These cases dealt with conduct that sustained a supervisor enhancement, but Wombles distinguishes their scale from his own facts. In *United States v. Washington*, a defendant received a supervisor enhancement for directing his girlfriend to deliver drugs on a frequent basis. 127 F.3d 510, 515 (6th Cir. 1997). In *United States v. Elledge*, a defendant recruited another to make a one-time delivery, nearly 300 pounds of marijuana driven cross-country. 344 F. App'x 119, 126–27 (6th Cir. 2009). Neither opinion, however, suggests that scale is a necessary or dispositive consideration to imposing a supervisor enhancement.

We have held that a defendant is subject to a supervisor enhancement if he "exercised control or authority over at least one accomplice." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). Further, we have held that when a defendant "directs an individual to act as a drug courier on his behalf," even on a one-time or temporary basis, their pre-existing or co-equal

relationship is irrelevant to whether the defendant qualifies for a supervisor enhancement. *United States v. Plunk*, 415 F. App'x 650, 652–53 (6th Cir. 2011) (citing *Vasquez*, 560 F.3d at 473; *Washington*, 127 F.3d at 515).

Beyond directing Summers to make one or two deliveries on his behalf, Wombles was also responsible for recruiting her into the conspiracy. Wombles argues in essence that any supervision by him of Summers was de minimis and thus does not qualify for an enhancement. But the Sentencing Guidelines do not provide for such an exception. The district court concluded that given these facts, Wombles qualified for a supervisor adjustment under U.S.S.G. § 3B1.1(b). This conclusion was not clearly erroneous and so we defer to the district court. *See Washington*, 715 F.3d at 983.

B

Second, Wombles argues that his sentence was unreasonable in light of his tragic childhood. We review the reasonableness of a sentence for abuse of discretion. *United States v. Bolds*, 511 F.3d. 568, 578 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). A sentence must be "adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (internal quotation omitted). A sentence must also be "proportionate to the seriousness of the circumstances surrounding the offense and offender," *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (internal quotation omitted), and it may not be imposed arbitrarily, based on impermissible sentencing factors, or without consideration of relevant sentencing factors. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). A sentencing court must not give unreasonable weight to a factor. *Id.* Reasonableness also has a procedural component. We must ensure that the district court committed no significant procedural error,

such as failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51.

On appeal, Wombles argues the district court erred in failing to meaningfully consider mitigating § 3553(a) factors. *See* 18 U.S.C. § 3553(a). He does not contend that he was given an inadequate opportunity to argue in favor of mitigation or that the court inadequately explained its reasoning, but rather that it failed to sufficiently consider the § 3553(a) factors. The district court acknowledged Wombles' childhood trauma as severe (though unfortunately familiar), but found that under the circumstances his is a heartland case. In its § 3553(a) analysis, the court explained that it weighed Wombles' sympathetic childhood against his conduct, the harm it visited on others, and his squandering of opportunities to reform after prior contacts with the criminal-justice system.

Length of sentence is a matter committed to the district court's discretion. *Bolds*, 511 F.3d at 578. We give "due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Gall*, 552 U.S. at 59–60. We must consider whether the district court abused that discretion by giving insufficient weight to Wombles' childhood in its sentencing analysis in light of other relevant § 3553(a) factors. The district court was aware of and gave consideration to Wombles' childhood, along with other factors, when it imposed sentence, and it did not abuse its discretion in doing so.

III

For the reasons set forth above, we **AFFIRM** the judgment of the district court.