**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0242n.06

Case No. 19-5705

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

May 01, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

IRFAN DEMEROVIC,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

**O P I N I O N**

BEFORE: MOORE, McKEAGUE, and READLER, Circuit Judges.

McKEAGUE, Circuit Judge. Irfan Demerovic pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Demerovic appeals his 121-month sentence, arguing the district court erred when it applied a three-level enhancement under United States Sentencing Guidelines § 3B1.1(b) for his alleged role in the conspiracy. For the reasons below, we affirm.

**I. Background**

Demerovic was a drug dealer who conspired with others in what is known as the "Dadanovic Drug Trafficking Organization" (Dadanovic DTO)—a "large-scale, international drug trafficking organization based out of Indianapolis, IN, and headed by Emir Dadanovic." The Dadanovic DTO had a large reach across the Midwest and parts of the South and was responsible

for delivering "cocaine and marijuana to regional distributors in Columbus, OH, Pittsburgh, PA, Chicago, IL, Nashville, TN, Bowling Green, KY, Louisville, KY, and London, KY."

Demerovic assisted in the transportation of drugs and money, accomplished by using vehicles with hidden compartments. He would also help package and conceal the cocaine in the load vehicles and escort the load drivers in order to maintain surveillance and act as a spotter for law enforcement. When the drugs reached their final destination, Demerovic would meet with the regional distributor and Demerovic (or the load driver) would collect money, thus completing the transaction. Demerovic and the load driver would then conceal the money in the same hidden compartment and return to Indianapolis.

An organized takedown of the Dadanovic DTO finally brought these operations to a halt. The DEA orchestrated a traffic stop on a load driver, later identified as Oscar Mauricio Cordova-Hernandez. Intercepted communications and surveillance revealed that Demerovic was assisting in that transport. And sure enough, law enforcement also stopped Demerovic driving just a short distance behind Cordova-Hernandez.

A grand jury charged Demerovic (and others in the Dadanovic DTO) with conspiring to knowingly and intentionally distribute, and possess with intent to distribute, five kilograms or more of a cocaine mixture, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

Trial commenced, and, notably, Demerovic was not there because he fled the country after being indicted. At trial, the government called Kevin Walker, who testified under oath regarding his relationship with Demerovic. To start, Walker testified that Demerovic approached him about selling narcotics and asked him if he knew anyone that was looking for marijuana or cocaine. Walker said he could make a few phone calls, which he did, but the calls didn't yield any results. According to Walker, Demerovic even told Walker that he never sold anything less than a kilogram

of cocaine. Nothing came of Walker and Demerovic's initial interaction. A couple months later, however, Demerovic approached Walker again, asking if Walker could be his personal chauffeur. Walker agreed and continued to drive for Demerovic for approximately two years, and Demerovic compensated him $500 a trip. During this time, Walker would drive to any city Demerovic told him to drive, and, toward the end of the two years, Walker was driving up to three times a week. Demerovic further instructed Walker to drive for at least two more individuals. Walker was given a story: that he was transporting Chinese microchips. But Walker "didn't believe it." And sometimes, Walker would observe Demerovic and others stuff black trash bags into various compartments in the cars.

Demerovic was apprehended in Germany and returned to the United States. He ultimately pled guilty, and the court considered at sentencing whether Demerovic was a "manager" for purposes of § 3B1.1(b), finding Demerovic qualified for the enhancement. This resulted in a three-level enhancement to Demerovic's base offense level. The district court sentenced Demerovic to 121 months of imprisonment, which was at the bottom of his guideline range. Demerovic now appeals his sentence, arguing the district court erred in applying the § 3B1.1 enhancement.

## II. Analysis

A district court's application of a § 3B1.1 enhancement "traditionally has been subject to de novo review for legal conclusions and clear-error review for factual findings." *United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014) (citing *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005)). There is some doubt after *Buford v. United States*, 532 U.S. 59, 66 (2001), whether we apply a more deferential review to a district court's application of a sentencing guideline, instead of pure de novo review. *Id.* But even under de novo review, we find Demerovic qualifies as a "manager" for purposes of § 3B1.1(b).

To qualify for this enhancement, a defendant must be "a manager or supervisor (but not an organizer or leader)" and the criminal activity must involve five or more participants or be otherwise extensive. U.S.S.G. § 3B1.1(b). The "defendant must have exerted control over at least one individual within [the] criminal organization." *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007) (quotation omitted). When determining whether a defendant acts as a "manager" or a "supervisor" under § 3B1.1(b), courts look to "the defendant's relative responsibility," such as whether the defendant employed another person's help in carrying out the crime and directed that person's criminal efforts. *United States v. Henley*, 360 F.3d 509, 517 (6th Cir. 2004) (citation and quotation marks omitted); *see also United States v. Munoz*, 233 F.3d 410, 416 (6th Cir. 2000) (upholding finding that defendant played a managerial role where defendant arranged for courier to deliver drugs). A defendant can also be considered a manager when he recruits individuals to participate in the criminal scheme. *United States v. Castilla-Lugo*, 699 F.3d 454, 460–61 (6th Cir. 2012). Moreover, the participants "managed or supervised, importantly, need not have been convicted or even charged"—it is enough they were "aware of the criminal objective and knowingly offered their assistance." *United States v. Mitchell*, 295 F. App'x 799, 802 (6th Cir. 2008) (citing *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002)) (internal quotation marks omitted).

Here, the district court explicitly found that Demerovic "coordinated numerous deliveries, recruited Mr. Walker, provided him a car" and "supervised Walker's sales." Further, the court found the evidence suggested Walker "engaged in illegal activity" and "was involved in furthering the conspiracy." None of these factual conclusions are clearly erroneous, given the record.

Even under a de novo review, these facts are enough to support an enhancement under § 3B1.1(b). There doesn't even have to be a showing of "control"—which would be required for

an enhancement under § 3B1.1(a)—just supervision is enough. *United States v. Johnson*, 736 F. App'x 568, 572 (6th Cir. 2018). Indeed, that Demerovic supervised and directed Walker's transportation efforts is sufficient to qualify Demerovic as a "manager." *Henley*, 360 F.3d at 517; *Mitchell*, 295 F. App'x at 802. But there's not only that. Demerovic also recruited Walker, asking Walker initially if he would sell narcotics. "[R]ecruiting individuals to complete narcotics deliveries, even on a one time or temporary basis, constitutes supervisory conduct that warrants a § 3B1.1 enhancement." *United States v. Plunk*, 415 F. App'x 650, 652–53 (6th Cir. 2011) (citing cases); *see also Castilla-Lugo*, 699 F.3d at 460–61. All of this considered, Demerovic qualified as a "manager" of Walker in a conspiracy that involved far more than five participants.

Demerovic argues that the district court relied solely on Walker's testimony to apply the enhancement. And, according to Demerovic, this was wrong since Walker testified that he didn't know he was transporting cocaine. Demerovic's arguments don't hold any weight compared to the record.

In his brief, Demerovic argues that "Mr. Walker testified that he did not know that he was transporting appellant to further drug trafficking." And that the "government must have believed Mr. Walker: he was not charged with any narcotics related offense in connection with his activities." Both of Demerovic's propositions are false. First, Walker never said that he "didn't know" he was transporting cocaine. Walker said he never asked. To the contrary, Walker didn't actually believe he was transporting microchips for Demerovic. Moreover, when Demerovic initially approached Walker, Demerovic asked him to sell narcotics—cocaine and marijuana, specifically. Walker even tried to make a few calls but was unsuccessful. Second, Walker never said he was innocent; Walker's charges were dismissed because of his cooperation.

Next, Demerovic argues the district court relied solely on the testimony of Walker to apply the § 3B1.1 enhancement.  Not so.  The district court found that "Demerovic coordinated numerous deliveries," in addition to its findings that Demerovic recruited and supervised Walker.

Even applying a de novo review, sufficient evidence supports that Demerovic acted as a "manager" of at least one person in a conspiracy with more than five participants—thus warranting an enhancement under § 3B1.1(b).

## III.  Conclusion

For these reasons, we affirm.