NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0507n.06

Case No. 24-5999

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 29, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| BRYAN DARNEL RAGSDALE, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

READLER, Circuit Judge. Bryan Ragsdale pleaded guilty to crimes involving the distribution of methamphetamine and fentanyl. In sentencing Ragsdale to 170 months of imprisonment, the district court applied a two-level enhancement under § 3B1.1 of the U.S. Sentencing Guidelines in light of Ragsdale's managerial role in the conspiracy as part of his wrongdoing. Ragsdale contends that the district court erred in applying the enhancement as well as by insufficiently considering Ragsdale's troubled upbringing in selecting his sentence. Disagreeing on both fronts, we affirm.

I.

Bryan Ragsdale (also known as "Smooth" or "Slim") and his co-defendant Myrtle Craig sold methamphetamine and fentanyl to a confidential informant on numerous occasions. Most aspects of those transactions are not at issue in this appeal. Instead, our focus is on the relationship

between Ragsdale and Craig during three of these sales. On each occasion, the informant arranged the sale through communications with Ragsdale. But the nature of the eventual exchanges varied. When the informant arrived for the first controlled buy, he was met by both Ragsdale and Craig, with Craig ultimately delivering the drugs to the informant. For the second buy, Ragsdale explained that he would send Craig to complete the transaction because he was out of town. Craig subsequently did so. And for the third, Ragsdale himself showed up to the exchange, but with only a partial quantity of the purchased drugs. Ragsdale told the informant that Craig would bring the remainder of the drugs, which she did a short time later. In all three instances, Ragsdale determined the quantity, location, and time at which the sales would take place.

For this conduct, Ragsdale pleaded guilty to conspiring to distribute methamphetamine and fentanyl in violation of 21 U.S.C. § 846, and to distributing methamphetamine and fentanyl in violation of 21 U.S.C. § 841(a)(1). At sentencing, the government requested a two-level enhancement under § 3B1.1 of the U.S. Sentencing Guidelines due to Ragsdale's role as a leader of a conspiracy insofar as he instructed and directed Craig on when and where to drop the drugs. Ragsdale objected to the enhancement. Acknowledging that he "supplied information to" and "helped" Craig, Ragsdale contended that he nevertheless did not "recruit, supervise, [or] exercise decision-making" authority over Craig, nor did he "keep more of the proceeds." R. 65, PageID 215. The district court, finding "sufficient evidence, based upon all the information presented through the testimony, as well as the facts contained in the offense level conduct" to apply the enhancement, honored the government's request and imposed the enhancement. R. 78, PageID 330.

With the enhancement, Ragsdale's base offense level was 31. And taking into account his criminal history, Ragsdale's guidelines range was 151 to 188 months. Ragsdale requested a low-

2

end sentence given his family history: He was kicked out of his house by his stepfather at age 16, leaving Ragsdale to reside in a drug house. The district court considered this mitigating factor during the sentencing. Given Ragsdale's extensive criminal history, however, the district court concluded that "a sentence in the middle of the range, 170 months, would not only provide deterrence" for Ragsdale, but it would also "provide general deterrence for others that might be inclined to commit a similar offense." *Id.* at PageID 355. We now turn to Ragsdale's timely appeal, which raises both procedural and substantive reasonableness challenges to his sentence.

II.

A. Beginning with procedural reasonableness, Ragsdale argues that the district court procedurally erred in imposing a two-level sentencing enhancement under § 3B1.1, which applies to a defendant who served as an "organizer, leader, manager, or supervisor" of the conspiracy offense for which the defendant is being sentenced. U.S. Sent'g Guidelines Manual § 3B1.1(c) (U.S. Sent'g Comm'n 2024). Here, Ragsdale was charged with conspiring with Craig to distribute methamphetamine and fentanyl pursuant to 21 U.S.C. § 846. The district court applied the two-level enhancement for Ragsdale's role in the conspiracy—that of organizing, leading, managing, or supervising the conspiracy.

Our procedural reasonableness standard requires the district court to "properly calculate the guidelines range, treat that range as advisory, consider the [relevant] sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review the district court's adherence to those requirements for an abuse of discretion, "keeping in mind that factual findings will stand unless clearly erroneous and legal conclusions

will stand unless our fresh review leads to a contrary conclusion." *Id.* (citing *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007)). When assessing the district court's application of a § 3B1.1 enhancement in particular, we must keep in mind that the "trial judge is most familiar with the facts" and is better positioned to evaluate the factual nuances of whether "someone is or is not a 'leader' of a conspiracy." *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). As such, our review is deferential. *United States v. Wombles*, 673 F. App'x 489, 491 (6th Cir. 2016) (citing *Washington*, 715 F.3d at 983).

Ragsdale qualified for the enhancement if he "exert[ed] control over at least one participant" in the conspiracy offense "in a supervisory, managerial, leadership, or organizational capacity." *United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997); *see also* U.S. Sent'g Guidelines Manual § 3B1.1 cmt. n.2 (U.S. Sent'g Comm'n 2024). A participant, in turn, is one "who is criminally responsible for the commission of the offense, but need not have been convicted." *United States v. Hills*, 27 F.4th 1155, 1199 (6th Cir. 2022) (quoting U.S. Sent'g Guidelines Manual § 3B1.1 cmt. n.1 (U.S. Sent'g Comm'n 2021)).

No reversible error occurred in Ragsdale's sentencing. From the evidence presented, the district court fairly concluded that Ragsdale exercised a managerial role in his conspiracy to distribute drugs with Craig. The government provided three examples: During the first controlled buy, Craig delivered the drugs to the confidential informant at a location Ragsdale selected, with Ragsdale standing watch. Before the second exchange, Ragsdale notified the informant that Craig would deliver the drugs on his behalf, which she later did. And during the third transaction, Ragsdale delivered a partial quantity of the drugs, telling the informant that Craig would bring the remainder. In each instance, Ragsdale negotiated the details of the exchange directly with the informant. Craig, by comparison, communicated with the informant just once, outside of the drug

drop itself. Taking all of this together, we see no reason to upset the district court's conclusion that Ragsdale exercised a managerial role in the conspiracy.

Our precedent confirms as much. Consider, for instance, *United States v. Washington*, 127 F.3d 510 (6th Cir. 1997), where the defendant received a § 3B1.1 enhancement for negotiating drug sales and then directing his girlfriend to deliver the drugs on his behalf. 127 F.3d at 515. Or *United States v. Vasquez*, 560 F.3d 461 (6th Cir. 2009), where we affirmed the district court's application of a § 3B1.1 enhancement because the defendant "exercised control or authority over at least one accomplice" when he negotiated a drug sale and offered to have his brother transport the drugs to a potential buyer. 560 F.3d at 473 (citing *United States v. Lalonde*, 509 F.3d 750, 765–66 (6th Cir. 2007)). Or *United States v. Plunk*, 415 F. App'x 650 (6th Cir. 2011), where we similarly affirmed the district court's application of the enhancement on the grounds that the defendant recruited his co-felon to deliver drugs on his behalf and referred to the co-felon as "'my man' when speaking to his customers and coordinating [the co-felon's] deliveries." 415 F. App'x at 652. Ragsdale's behavior does not materially differ from the behavior of the defendants in these cases. Nor, it follows, should the application of the § 3B1.1 enhancement.

Ragsdale responds by critiquing the record the government produced to support the enhancement. For example, he says that the government was required to provide evidence of how Craig acquired the drugs, whether Ragsdale or Craig ultimately controlled the drugs, or how the proceeds were divided among them. To be sure, this evidence, had it been mustered, may well have bolstered the district court's conclusion. Yet its absence does not sink that ruling into reversible error territory. *See, e.g.*, *United States v. Castilla-Lugo*, 699 F.3d 454, 461 (6th Cir. 2012) (affirming district court's application of the enhancement even though the government did not prove "other factors, such as receiving a larger share of the profits"). So too for Ragsdale's

claim that the government provided insufficient evidence that Ragsdale directed Craig to deliver the drugs. True, the government did not provide any direct correspondence between the two. But it was not required to do so. The district court could reasonably infer from the evidence presented that Ragsdale directed Craig's actions. And it was well within its discretion to do so. *Cf. United States v. Johnson*, 934 F.3d 498, 499 (6th Cir. 2019) (affirming district court's sentence on grounds that "it provided a detailed explanation for its decision based on facts and reasonable inferences from the record").

Ragsdale's citations are similarly unavailing. *United States v. Collins*, 877 F.3d 362 (7th Cir. 2017), is an out-of-circuit decision that conflicts with one of our own. *Compare Collins*, 877 F.3d at 368 (holding that the enhancement should not apply to defendants who direct a drug courier on "just . . . one occasion . . . apparently as an equal rather than a subordinate"), *with Wombles*, 673 F. App'x at 491 (explaining that the § 3B1.1 enhancement applies to defendants who "'direct[] an individual to act as a drug courier on his behalf,' even on a one-time or temporary basis" (quoting *Plunk*, 415 F. App'x at 652–53)). Nor does Ragsdale's reference to *United States v. Christian*, 804 F.3d 819 (6th Cir. 2015), change things. In *Christian*, we addressed § 3B1.1's application to a defendant who had exclusive control over the storage facility that held the items stolen by the co-conspirators. 804 F.3d at 824–25. There, we held that the enhancement does not apply where "a defendant's role extended only to management of a criminal enterprise's *property*." *Id.* at 824 (emphasis added). Here, on the other hand, the district court applied Ragsdale's enhancement due to his control not over property, but over Craig, a participant in the criminal scheme.

B. Turn now to Ragsdale's substantive reasonableness challenge. Ragsdale claims that the district court should have selected a sentence at the low end of the guidelines range in light of

his troubled upbringing. In considering Ragsdale's challenge, we ask whether the district court abused its discretion in selecting the length of his sentence. *Gall*, 552 U.S. at 51. "For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).'" *United States v. Young*, 847 F.3d 328, 371 (6th Cir. 2017) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). A sentence within the guidelines range is presumptively reasonable. *Gall*, 552 U.S. at 51; *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Ragsdale has failed to rebut the presumption. The district court selected a sentence of imprisonment in the middle of the guidelines range—170 months. Before doing so, the court meticulously weighed each § 3553(a) factor. The court "consider[ed] [Ragsdale's] history and characteristics" including the fact that "family circumstances . . . place[d] him on the street" at 16, R. 78, PageID 353, Ragsdale's extensive criminal history, the need for general deterrence, and Ragsdale's need for rehabilitative services while in prison.

To Ragsdale's mind, the district court "failed to sufficiently consider [his] personal characteristics, specifically his terrible upbringing from the age of 16 and his exposure to the streets through homelessness and neglect." Appellant Br. 30. On appeal, however, we ordinarily do not question the weight the district court placed on the various § 3553(a) factors in determining the length of the sentence. *United States v. Frei*, 995 F.3d 561, 567–68 (6th Cir. 2021) (explaining that it is "simply beyond the scope of this court's appellate review" to second guess if the "district court should have balanced the § 3553(a) factors differently" (citation modified)). Nor, contrary to Ragsdale's claim, was the district court required to further explain how it reached its "decision

to stay at the middle of the range." Appellant Br. 33. Again, that assessment enjoys a presumption of reasonableness—a high bar Ragsdale fails to clear.

*    *    *    *    *

We affirm.